IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**DAVID LEE STARR**                                                                                                **PLAINTIFF**
**ADC #084807**

v.                                         No. 2:23-CV-00129-LPR-JTK

**BRANDY MOODY, et al.**                                                                                **DEFENDANTS**

## ORDER

The Court has reviewed the Partial Recommended Disposition (PRD) submitted by United States Magistrate Judge Jerome T. Kearney (Doc. 28).  No objections have been filed, and the time to do so has expired.  After a *de novo* review of the PRD and careful consideration of the case record, the Court hereby approves and adopts the PRD in its entirety as this Court's findings and conclusions in all respects—except as follows.

In their Motion to Dismiss, the ADC Defendants argued that Plaintiff's claims against Warden Dycus were based on nothing more than "general supervisory liability."[1]  The PRD disagreed, concluding that "Plaintiff made specific allegations of how each ADC Defendant was deliberately indifferent to his serious medical needs."[2]  To support this conclusion, the PRD focused on pages 9–10 of the Complaint and explained that "Plaintiff alleges Defendant Dycus 'has failed to treat and provide adequate health care causing [] Plaintiff pain and suffering by refusing to order liver cancer medication, provide [] Plaintiff with a specialist and[/]or team of specialists.'"[3]

The problem with the PRD's explanation is that it leaves out an important part of the

---

[1] Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 15) at 2.

[2] Partial Recommended Disposition (Doc. 28) at 3.

[3] *Id*. at 3–4.

1

allegation.  The actual allegation in full reads as follows:

> Plaintiff further contends that Brickeys contract provider Dr. Gary R. Kerstein by Wellpath under James Dycus Warden has failed to treat and provide adequate health care causing [] Plaintiff pain and suffering by refusing to order liver cancer medication, provide [] Plaintiff with a specialist and[/]or team of specialists.[4]

The full text and surrounding context of this allegation makes clear that the allegation is about the personal knowledge, actions, and inactions of Defendant Kerstein, not Warden Dycus.  The "under James Dycus Warden" reference in the allegation confirms (rather than undermines) the "general supervisory liability" argument pressed by the ADC Defendants.

Aside from the foregoing example, the only other Warden Dycus allegation the PRD relies on is on page 13 of the Complaint.  The PRD explains that "Plaintiff maintains Defendant Dycus 'caused him two years of suffering' due to the alleged deliberate indifference."[5]  But here again that's not quite what the Complaint actually says.  The actual allegation reads as follows:

> Plaintiff contend[s] that Gragoey Rachigl had a duty to protect Plaintiff health condition but instead acted in concert with defendant Gary R. Kerstein, Wellpath Medical Company, James Dycus Warden[,] and Ms. Moody causing [] Plaintiff to suffer severely in pain for over two years which has establish[ed] an 8th Amendment violation and 14th Amendment violation.[6]

Neither the text nor the context surrounding this allegation suggest Plaintiff was saying anything about Warden Dycus's personal knowledge, actions, or inactions here.  Liberal construction of *pro se* complaints is one thing.  But the suggestion that this passage is anything more than a legal conclusion concerning Warden Dycus's purported general supervisory liability stretches the concept of liberal construction beyond its breaking point.  This is especially true in light of a different allegation in the Complaint, where Plaintiff expressly says that "Wellpath knew []

---

[4] Compl. (Doc. 2) at 9–10.

[5] Partial Recommended Disposition (Doc. 28) at 4.

[6] Compl. (Doc. 2) at 13.

Plaintiff was suffering in pain continuously and did not communicate with upper staff member[s] (specifically Director Dexter Payne [and] Warden James Dycus) . . . ."[7]

Given the foregoing, the Court does not believe that Plaintiff has stated a viable medical indifference claim against Warden Dycus. Other than that, however, the Court generally accepts the PRD's conclusions. Accordingly, the ADC Defendants' Motion to Dismiss (Doc. 14) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to (1) all of Plaintiff's official capacity claims, (2) all of Plaintiff's individual capacity claims against Warden Dycus, and (3) Plaintiff's individual capacity claims against Director Payne to the extent those claims arose before June 8, 2020. These three categories of claims are dismissed. The ADC Defendants' Motion to Dismiss is otherwise DENIED.[8]

IT IS SO ORDERED this 24th day of July 2024.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[7] *Id*. at 15. The Complaint does later allege that "Director Dexter Payne had full knowledge of [Plaintiff's] serious medical conditions" and didn't do anything. Out of an abundance of caution, the Court is letting the deliberate indifference claims against Director Payne proceed to the next stage. But—to lay the cards on the table—the Court is dubious that the claims will go any further than that. In any event, as best the Court can tell, the same allegation concerning knowledge is not made with respect to Warden Dycus—except for a vague and general allegation on page 28 of the Complaint that "all defendants named had actual knowledge of these claims of threat to [Plaintiff's] health and safety and . . . failed to make any accounted and reasonable measure to remedy Plaintiff's requested medical and grievance and thus leads to the Defendants subjective intent that harmed Plaintiff by the Defendants deliberate indifferences, discrimination . . . ." Such a vague and general allegation is not enough.

[8] As used in this Order, "ADC Defendants" refers to Warden Dycus and Director Payne. They are the only Defendants that moved for dismissal.